**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**DARREN W. BROWN,**

      **Petitioner,**

      **v.**                          **CASE NO.  22-3063-JWL**

**D. HUDSON, Warden,
USP-Leavenworth,**

      **Respondent.**

**MEMORANDUM AND ORDER**

      This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner is in federal custody at USP-Leavenworth in Leavenworth, Kansas ("USPL"). Petitioner alleges that the Bureau of Prisons ("BOP") has improperly assessed him as "High Risk" rendering him ineligible for elderly early-release under the First Step Act ("FSA"). The Court finds that Petitioner does not allege facts establishing a federal constitutional violation and denies relief.

**I.  Background**

      Petitioner is incarcerated with the BOP and is housed at USPL for service of his federal sentence.  Petitioner is currently serving a sentence of 180 months for Possession with Intent to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 851, and has a projected release date of May 20, 2025.  Doc. 5–1, Declaration of H. Degenhardt ("Degenhardt Decl.") at ¶ 3, and Ex. A.

      On April 6, 2022, Petitioner filed the instant § 2241 Petition claiming he is improperly assessed as "High" under the Prisoner Assessment Tool Targeting Estimated Risk and Needs

("PATTERN"), and that this alleged error is disqualifying him for "Elderly 2/3 release." *See* Doc. 1, at p. 6, 8.  Petitioner asks the Court to remove the "High Risk" assessment. *Id*. at 8.

## II.  Discussion

### 1.  Exhaustion

Generally, a federal prisoner must exhaust available administrative remedies before commencing a habeas corpus petition under 28 U.S.C. § 2241.  *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam).  The BOP's four-part administrative remedy program is codified at 28 C.F.R. § 542.

Respondent argues that Petitioner has not exhausted his administrative remedies because his Remedy 1048039 does not "make any reference to elderly offender release." (Doc. 5, at 4.) Petitioner argues in his traverse that he is not claiming that he should be entitled to participate in the elderly home confinement program, but rather he is disputing the BOP's scoring of him as high risk under the Department of Justice's Risks and Needs Assessment System.  The "High" risk assessment makes him ineligible to participate in the program.  Petitioner did raise this claim in his administrative remedy and has exhausted his administrative remedies regarding the correction of his risk assessment.    *See* Doc. 5–1, at 29–45.

### 2.  Standard of Review

To obtain habeas corpus relief, an inmate must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S. C. § 2241(c)(3).  A § 2241 petition is appropriate when a prisoner challenges the execution of his sentence rather than the validity of his conviction or sentence.  *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997).

### 3.  Analysis

The Court has no power to order that an inmate be placed in the First Step Act's elderly-offender pilot program—that decision falls squarely within the Attorney General's discretion. *See* 34 U.S.C. § 60541(g)(1)(B) ("the Attorney General *may* release some or all eligible elderly offenders and eligible terminally ill offenders from Bureau of Prisons facilities to home detention, upon written request") (emphasis added); *see also  Marshall v. Hudson*, 807 F. App'x 743, 747 (10th Cir. 2020) (unpublished) ("[U]nder § 2241, federal courts have no power to order that an inmate be placed in the pilot program.").

The Attorney General also has "discretion to determine whether a particular offender qualifies as eligible because he is in charge of determining whether the inmate poses a 'substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention.'"   *Id*. (citing  § 60541(g)(5)(A)(vii)).   However, despite this discretion, the Court still retains jurisdiction to consider petitions challenging the procedures through which the Attorney General has exercised discretion.  *Id*. at 748 ("So though § 2241 might not be proper to challenge the Attorney General's *actual* exercise of discretion to deny an inmate access to the home-release pilot program, *Izzo* keeps § 2241 available as an avenue for prisoners to raise arguments concerning the *procedures* through which the Attorney General has exercised discretion."), citing *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 307 (2001) (noting that, historically, "[h]abeas courts . . . regularly answered questions of law that arose in the context of discretionary relief" (citations omitted)); *Sierra v. Immigration & Naturalization Serv.*, 258 F.3d 1213, 1217 (10th Cir. 2001) (concluding that, even when a statute gives the Attorney General discretion over certain decisions, "challenges [to] the constitutionality of the procedures used" are properly raised under § 2241 because "[i]t is never

within the Attorney General's discretion to act unconstitutionally" (citations omitted)).

This leaves the Court with an "issue of characterization"—the Court "must decide whether [petitioner] seeks a court order granting him access to the pilot program (outside our jurisdiction), or whether [petitioner] seeks a court order remedying some unlawful procedure through which the BOP processed his application (within our jurisdiction)." *Marshall*, 807 F. App'x at 749.

Petitioner has made it clear that he is not seeking an order directing the BOP to grant him access to the elderly home confinement program. Rather, he claims that the BOP has improperly scored him as "high risk" under the PATTERN risk assessment system. This is the issue Petitioner exhausted through the administrative grievance procedures.

The FSA was enacted into law on December 21, 2018. Among other things, the FSA directs the BOP to take specific actions regarding inmate programming, time credits, and compassionate release. The FSA directed the Attorney General to develop a risk and needs assessment system within 210 days of enactment. 18 U.S.C. § 3632(a). The Attorney General published the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") on July 19, 2019.[1]

The law further requires the BOP to use the risks and needs assessment system to: (1) determine the recidivism risk and classify each inmate as having a minimum, low, medium, or high risk for recidivism; (2) determine the type of EBRR programming appropriate for each inmate; and (3) implement a system of "time credits" and other incentives to encourage inmate participation in the programming. 18 U.S.C. § 3632(a)–(d).

---

[1] The First Step Act of 2018: Risk and Needs Assessment System, accessible online at https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf (last visited June 30, 2022); *see also* https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf (last visited June 30, 2022).

For purposes of the Elderly Home Confinement Pilot Program, the term "eligible elderly offender" is defined as an offender in the custody of the Bureau of Prisons who, among other criteria, has been determined by the BOP "to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention."  34 U.S.C. § 60541(g)(5)(A)(vii).

Petitioner claims he is improperly assessed as "High Risk" under the PATTERN system because the BOP incorrectly determined that he was a leader/organizer in the crime leading to his criminal conviction and/or caused death or serious bodily harm.  *See* Doc. 1, at 6. Respondent disputes this claim, arguing that Petitioner's High Risk PATTERN designation has nothing to do with his current conviction and is based on his poor institutional behavior, as he has received two drug-related incident reports in the last twelve months.

Respondent argues that Petitioner is incorrectly combining two separate assessments under the FSA in making his claim—assessment for *eligibility* to earn FSA time credits and a recidivism risk assessment under PATTERN.  Doc. 5–2, Declaration of Alex Heim ("Heim Decl."), at ¶ 16.  Inmates are ineligible to earn FSA time credits if they are currently serving a sentence for certain enumerated offenses.  18 U.S.C. § 3632(d)(4)(D).  Certain offenses render an inmate ineligible only if death or serious bodily injury resulted from the conviction or the sentencing court found that the inmate was an organizer, leader, manager or supervisor of others in the offense.  *See id*. at § 3632(d)(4)(D)(lviii) and (lxvii).

Petitioner is currently serving a sentence of 180 months for Possession with Intent to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 851.  Petitioner's conviction under § 841(b)(1)(A) would render him ineligible to earn FSA time credits if death or serious bodily injury resulted from the use of such substance.

*See* 18 U.S.C. § 3632(d)(4)(D)(lviii).  Likewise, his conviction would render him ineligible to earn FSA time credits if the sentencing court found that he was an organizer, leader, manager, or supervisor of others in the offense.  *Id*. at § 3632(d)(4)(D)(lxvii).

Petitioner was found to be ineligible for FSA time credits on December 2, 2019.  *See* Heim Decl., at ¶ 19, and Ex. B.  Subsequently, Petitioner's convictions were reviewed, and it was determined that Petitioner should be eligible to earn FSA time credits.  *Id*.  On May 4, 2022, Petitioner's FSA status was changed to Eligible.  *Id*.  Petitioner's designation as eligible for FSA time credits is independent of his assessment under PATTERN.  *Id*. at ¶ 20.

The risk and needs assessment system includes both a risk component and a needs component.  *The First Step Act of 2018:  Risk and Needs Assessment System*, at 61 (July 19, 2019) (link is set forth in Footnote 1).  PATTERN is the risk instrument designed to predict the likelihood of general and violent recidivism after an inmate leaves BOP custody.  *Id*. at 43, 65 n.2.  An enhanced version of PATTERN was launched in January 2020, and the DOJ continues to monitor its use, study the data, and consider any improvements and adjustments that should be made for future assessment.  *The First Step Act of 2018:  Risk and Needs Assessment System – UPDATE*, at 26 (January 2020) (link is set forth in Footnote 1).

Section 3632(a)(1)(4) provides that the risk and needs assessment system shall be used to "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison . . .."  18 U.S.C. § 3632(a)(1)(4).  The PATTERN tool was developed with an emphasis placed "on a system that accurately measures an inmate's change during incarceration, and provides opportunities for inmates to reduce their risk scores post-intake during periodic reassessments."  *The First Step Act of 2018:  Risk and Needs Assessment System – UPDATE*,

at 7.  Therefore, many of the factors used in the PATTERN tool are dynamic—"meaning that an inmate's risk of recidivism could change with appropriate programming and services or could be affected by the inmate's behavior."  *Id*.  "[A]dding dynamic factors to the risk tool and minimizing static factors (those features of an offenders' history that are not amenable to change) provides a greater opportunity for offenders to reduce their risk scores over time during periodic reassessments."  *Id*.  In furtherance of these goals, the PATTERN tool includes fifteen factors— eleven dynamic and four static.  *Id*. at 10.  The factors are:

> Dynamic Factors:
> 1.  Infraction convictions (any) current incarceration
> 2.  Infraction convictions (serious and violent) current incarceration
> 3.  Infraction-free (any) current incarceration
> 4.  Infraction-free (serious and violent) current incarceration
> 5.  Number of programs completed (any)
> 6.  Work programming
> 7.  Drug treatment while incarcerated
> 8.  Non-compliance with financial responsibility[2]
> 9.  History of violence
> 10.  History of Escape
> 11.  Education score[3]
>
> Static Factors
> 12.  Age at time of assessment
> 13.  Instant violent offense
> 14.  Sex offender (Walsh)
> 15.  Criminal history score

*Id*. at 10–11.  "The process of weighting the variables was based on scientific research and analysis."  *Id*. at 11.  Inmates can use the dynamic factors in the updated PATTERN to lower their risk score by completing programs and refraining from incurring infractions.  *Id*. at 11; *see also* Attachment A (showing examples of how risk scores can be lowered or increased depending on an inmate's behavior).

---

[2] For females, this factor was included only in the general recidivism model.  It was not included in the violent recidivism model because it was not predictive of this outcome.  Additionally, this factor was predictive only for females, not males.

[3] Education score was found to be predictive only for females, not males.

Respondent argues that Petitioner's HIGH assessment under PATTERN remains correct despite his change in FSA eligibility, because the designation is not based on a determination by the BOP that Petitioner was a leader or organizer or that death or serious bodily harm were elements of his current criminal conviction. Heim Decl., at ¶ 21, and Exs. C, D. Rather, it is based on Petitioner's behavior while incarcerated, including his receipt of two drug-related incident reports in the last twelve months. *See id.*

In his traverse, Petitioner argues that he has exhausted his administrative remedies and clarifies that he is not seeking participation in the elderly home confinement program. (Doc. 6, at 1.) Petitioner asks the Court to order the BOP to correct his PATTERN assessment, and states that "had it not been for the improper scoring of the instant offense Petitioner would be classified at a lower status." *Id.* at 2. Petitioner asks the Court to order the BOP to correct his status to lower his recidivism risk to allow him to qualify for elderly 2/3 release. *Id.*

The risk determination made under the PATTERN instrument "is separate and distinct from BOP's security level classifications, which also include Minimum, Low, Medium and High." *The First Step Act of 2018: Risk and Needs Assessment System*, at n.5 (July 19, 2019) (noting that "[a]n inmate may be classified as Low security and designated to a commensurate facility because he or she poses little risk of flight or institutional misconduct, while at the same time have a high risk of recidivism"). Under the FSA, current inmates were initially assigned a recidivism risk level and had their needs assessed. *Id.* at 75. The BOP ordinarily reviews and assesses all inmates every six months, with the Unit Management Team performing the reassessment of an inmate's risk level. *Id.*

Petitioner's most recent risk assessment, conducted on January 14, 2022, shows his security level as medium, with his risk level as high. (Doc. 5–2, at 18.) The assessment shows

deductions to the total points for programs completed and education, while showing points assessed for 5 incident reports, including 3 serious incident reports. The assessment shows "0" points assessed under the category for violent offenses, but shows an assessment of points for history of violence. The points added or deducted appear to be consistent with the points assigned in the revised PATTERN Risk Assessment Model. *See The First Step Act of 2018: Risk and Needs Assessment System – UPDATE*, at Appendix II, pages 37–39 (January 2020). Petitioner's next PATTERN assessment will be conducted no later than July 13, 2022. Heim Decl. at ¶ 21.

Petitioner has failed to point to any item in his most recent assessment that was improperly assessed. Petitioner has failed to show that his assessment was improper or that the procedures used were unconstitutional. Petitioner has failed to demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citing *Walker v. Johnston,* 312 U.S. 275, 286 (1941) ("On a hearing [the § 2241 petitioner has] the burden of sustaining his allegations by a preponderance of evidence.")); *Espinoza v. Sabol,* 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner.") (citations omitted); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (the burden of proof was upon the petitioner); *Wilson v. Keffer*, Civil Action No. 08–1961, 2009 WL 1230020, at *4 (W.D. La. May 5, 2009) ("In order to state a claim for relief pursuant to 28 U.S.C. § 2241, a *habeas corpus* petitioner must allege and ultimately establish that he is in custody in violation of the Constitution and laws of the United States; and, the habeas petitioner has the burden of proof with regard to his claims for relief.").

**IT IS THEREFORE ORDERED BY THE COURT** that the Petition for habeas corpus is **denied.**

**IT IS SO ORDERED**.

**Dated July 5, 2022, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**